UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

| | | |
|---|---|---|
| JANE RUBENSTEIN, | : | No. _____ |
|     Plaintiff | : | |
| | : | |
| vs. | : | JURY TRIAL |
| | : | DEMANDED |
| CORNELL SCOTT-HILL HEALTH | : | |
| CORPORATION, | : | |
|     Defendant | : | November 14, 2018 |

## COMPLAINT

1.  Plaintiff, Jane Rubenstein, brings this action against her former employer, Defendant Cornell Scott-Hill Health Corporation ("CSHHC"), to recover for age discrimination, wrongful termination of her employment contract ("Contract"), and breach of the covenant of good faith and fair dealing.  Between 2010 and 2018, Plaintiff served with distinction as a pediatric nurse practitioner providing primary care to students at a school-based health center operated by CSHHC.  However, in June 2018, CSHHC wrongfully terminated her Contract based on a false allegation, breached the automatic renewal provision, and replaced Plaintiff with a substantially younger person.

2.  CSHHC knew that it could not terminate Plaintiff's Contract without good cause, so CSHHC invented a pretext (insubordination) that had no basis in fact.  CSHHC also made misrepresentations to Plaintiff and engaged in other bad faith conduct in an attempt to deprive Plaintiff of her rights under the Contract, including failure to provide the notice and fair hearing to which Plaintiff was entitled under the Contract prior to any purported termination.

## PARTIES

3. Plaintiff is a licensed advanced practice registered nurse ("APRN," or "nurse practitioner") who resides in Norwalk, Connecticut. Plaintiff was born in 1944 and she was 73 years old on the date of termination.

4. CSHHC is a Connecticut corporation with its principal place of business at 400 Columbus Avenue, New Haven, Connecticut.

## JURISDICTION & VENUE

5. This Court has original jurisdiction pursuant to 28 U.S.C. § 1331 over Plaintiff's cause of action under the Age Discrimination in Employment Act ("ADEA"), 29 U.S.C. § 623. Plaintiff has exhausted her administrative remedies pursuant to 29 U.S.C. § 626(d) of the ADEA by filing a charge of unlawful age discrimination with the Connecticut Commission on Human Rights and Opportunities ("CHRO") and the Equal Employment Opportunity Commission ("EEOC") on August 13, 2018, less than 180 days after her employment was terminated. Plaintiff withdrew the administrative charge on November 2, 2018 after it had been pending more than 60 days, and received a release of jurisdiction on November 14, 2018. (*See* Exhibit A hereto.)

6. This Court has supplemental jurisdiction over Plaintiff's state law claims pursuant to 28 U.S.C. § 1367 because they arise out of the same facts and circumstances as the federal cause of action.

7. Venue is proper in this Court pursuant to 28 U.S.C. § 1391(b) because a substantial part of the events or omissions giving rise to this claim occurred in the State of Connecticut.

## FACTS

### School Based Health Centers

8. The New Haven Public Schools operate thirteen school-based health centers ("SBHCs") in collaboration with certain health care agencies. The SBHCs are completely separate from the school nurse's office. They are primary care facilities, fully licensed by the Department of Public Health as outpatient pediatric clinics, where students can obtain comprehensive physical and mental health services.

9. CSHHC operates five SBHCs in New Haven pursuant to an annual contract with the New Haven Board of Education. CSHHC employs APRNs and social workers to staff those clinics.

10. APRNs have more authority for administering patient care than registered nurses; for example, APRNs are licensed and certified to prescribe medication, administer physical exams, diagnose illnesses and provide advanced medical treatment similar to a doctor.

### Employment Contract

11. Plaintiff began working in August 2010 as the APRN for the SBHC at the Davis Academy for Arts and Academics Interdistrict Magnet School ("Davis Street").

12. When she was hired by CSHHC, Plaintiff had more than 30 years of experience working in patient care and departmental administration as a pediatric APRN.

13. CSHHC initially hired Plaintiff in August 2010 on an at-will basis.

14. Thereafter, in August 2011, Plaintiff and CSHHC entered an Advance Practice Registered Nurse Part-Time Employment Contract ("Contract") providing employment through September 30, 2012.

15. By its terms, the Contract automatically renewed for successive one-year terms (running from October 1 through September 30) unless it was terminated prior to expiration.

16.     CSHHC could not terminate the Contract – or prevent its automatic renewal – at will.  Termination could only occur under one of three conditions: (i) if CSHHC lost funding for the position; (ii) if Plaintiff chose to resign; or (iii) if there was good cause for termination, namely, loss of licensure, misrepresentation of credentials, incapacity, unethical conduct or unacceptable performance.

17.     These provisions for automatic renewal and restrictions on termination were appropriate under the circumstances.  It was beneficial to students who obtained their primary medical care at the SBHC to have continuity of care year after year from someone who had come to know them and the community.

18.     Initially, the Contract provided for part-time employment for 30 hours per week. In subsequent years, Plaintiff's hours were increased from 30 to 32 hours per week.  Effective October 2015, Plaintiff's hours were increased to 35 hours per week.

19.     In regular written performance evaluations, Plaintiff's supervisors consistently stated that her work met or exceeded expectations.

### Contract Negotiations

20.     On October 1, 2017, the Contract automatically renewed for a successive one-year term to end on September 30, 2018.

21.     In December 2017, CSHHC proposed a substitute contract that would run from January through June 2018, with the stated goal of adjusting the automatic renewal terms to run from July 1 through June 30 in order to line up with the school calendar.  Plaintiff declined to enter a substitute contract in December 2017 because it would have effectively reduced her pay from January to June 2018, but indicated that she was willing to enter a new contract starting July 1 in order to accomplish CSHHC's stated goal of adjusting the renewal term.

22. In February 2018, CSHHC's Chief of Human Resources, Andrea Lobo, sent a letter informing Plaintiff that CSHHC would be sending a new contract for her consideration for 35 hours per week at a certain annual salary.

23. On or about June 6, 2018, CSHHC called Plaintiff to a meeting to discuss the new contract. Lobo and Plaintiff's direct supervisor, Leah Lucarelli, attended on behalf of CSHHC.

24. Contrary to Lobo's prior representations, the new contract presented to Plaintiff at the meeting included a reduction from 35 to 32 hours per week and a $7000 reduction in annual salary.

25. Plaintiff noted that this was contrary to Lobo's prior representation and explained how maintaining her schedule of 35 hours per week would be more beneficial to her patients and more profitable for CSHHC.

26. In response, Lobo inaccurately represented that CSHHC was required to cut Plaintiff's hours due to new terms in its SBHC contract with the New Haven Board of Education ("BOE").

27. After the meeting, Plaintiff telephoned a peer at another SHBC in New Haven run by a different health care agency (not CSHHC) in order to better understand how the BOE contracts were impacting APRN hours.

28. On or about June 7, 2018, that peer forwarded to Plaintiff an email from Sue Peters, the School Health Director for New Haven Public Schools, indicating that the BOE actually wanted APRNs to work 35 hours per week ("the Email"). In other words, the BOE's guidance was consistent with Plaintiff's current 35-hour position, and contrary to Lobo's representation.

29. Plaintiff shared the Email with Lucarelli, who said that this was "good information" that put Plaintiff's request "in a different light."

30. Lucarelli then encouraged Plaintiff to ask for a meeting with Lou Brady, who was the CSHHC's Chief Operating Officer at the time, to share the information and reiterate her request for 35 hours per week. While sitting in Lucarelli's office, Plaintiff telephoned Brady's secretary to set up a meeting for both Plaintiff and Lucarelli to attend.

31. A few minutes later, Lucarelli forwarded a copy of the Email to Lobo and Brady indicating that they might find it helpful in making their staffing arrangements.

## **Wrongful Termination**

32. Brady set a meeting date of June 11, 2018. The meeting was attended by Brady, Lobo, Lucarelli and Plaintiff. However, instead of discussing the contract issue, Lobo handed a termination letter ("the Letter") to Plaintiff.

33. The Letter falsely alleged that Plaintiff had been insubordinate by doing her due diligence concerning hours per week when, in fact, Lucarelli welcomed and encouraged Plaintiff's efforts.

34. The Letter reiterated Lobo's misrepresentation that the proposed reduction in hours from 35 to 32 was "as per the contract with the New Haven Board of Education."

35. The Letter purported to terminate the Contract "for good cause effective the end of the school year June 20, 2018," after which there were more than three months remaining in the existing Contract term.

36. The Letter also stated that CSHHC "will not be inviting you to return for the 2018/2019 school year nor will we issue you a new contract as planned."

37. The Letter purported to base the termination and non-renewal on Section 6b of the Contract. However, Section 6b only applied to circumstances in which Plaintiff could not work due to a loss of licensure, which did not occur in this case.

38. The Letter also purported to base the termination and non-renewal on Section 6c of the Contract. However, Section 6c required unacceptable performance or unethical conduct, which did not occur in Plaintiff's case.

39. Section 6c also entitled Plaintiff to notice and a fair hearing to rebut any allegations of unacceptable performance or unethical conduct, which CSHHC utterly failed to provide in this case.

## COUNT ONE
### (Violation of Age Discrimination in Employment Act, 29 U.S.C. § 623)

40. Plaintiff repeats and realleges paragraphs 1 through 39 as if fully set forth herein.

41. In June 2018, Plaintiff was 73 years of age.

42. In light of her extensive work experience and excellent performance evaluations, Plaintiff was qualified to continue providing pediatric APRN services.

43. CSHHC terminated Plaintiff's Contract and gave notice of non-renewal of the Contract by Letter dated June 11, 2018, effective June 20, 2018.

44. But for her age, CSHHC would not have terminated or refused to renew Plaintiff's Contract.

45. Plaintiff and her contemporary, Marguerite Kyle (aged 68), were the only APRNs whose hours were cut by CSHHC.

46. The younger APRNs employed by CSHHC – Lisa MacMaster, Carla Rosato and Leah Lucarelli – were renewed at 40 hours per week, as before. On information and belief, in

June 2018, McMaster was in her mid-forties, Rosato in her mid-fifties, and Lucarelli in her mid-thirties.

47. On information and belief, CSHHC replaced Plaintiff with a younger APRN, who will not commence working until December 2018, which has caused a gap in services at the Davis Street SBHC.

48. As a result of CSHHC's unlawful discrimination, Plaintiff has been deprived of all the benefits and privileges of employment in an amount to be established at trial. Plaintiff is entitled to such affirmative relief as may be appropriate under the Age Discrimination in Employment Act ("ADEA"), 29 U.S.C. § 621 et seq.

49. CSHHC's acts and/or omissions were willful and taken with malice or with reckless indifference to Plaintiff's federally protected rights such as to entitle Plaintiff to an award of liquidated double damages pursuant to 29 U.S.C. §§ 626(b) and 216(b).

## COUNT TWO
### (Breach of Contract)

50. Plaintiff repeats and realleges paragraphs 1 through 39 as if fully set forth herein.

51. Under the Contract, CSHHC was obligated to provide employment to Plaintiff through September 20, 2018, and for successive one-year terms thereafter, unless (i) CSHHC lost funding for the position; (ii) Plaintiff chose to resign; or (iii) there was good cause for termination, namely, loss of licensure, misrepresentation of credentials, incapacity, unethical conduct or unacceptable performance.

52. CSHHC breached the Contract when it purported to terminate Plaintiff's employment by Letter dated June 11, 2018, effective June 20, 2018, citing Sections 6b and 6c of the Contract.

53. There was no cause for CSHHC to terminate the Contract under Section 6b because Plaintiff did not lose her licensure or any other qualification necessary to perform her APRN work, as required for Section 6b to apply.

54. There was no cause for CSHHC to terminate the Contract under Section 6c because that provision required unacceptable performance or unethical conduct, which did not occur in Plaintiff's case. In fact, on June 18, 2018, two days before the effective termination date, Lucarelli completed a performance evaluation affirming that Plaintiff's work during the 2017-2018 term had exceeded expectations.

55. CSHHC also breached the Contract by failing to provide the notice and fair hearing to which Plaintiff was entitled prior to any purported termination under Section 6c.

56. Given that there were no grounds to terminate the Contract, CSHHC also breached the automatic renewal provision by failing to provide Plaintiff with continued employment in her APRN position.

57. As a result of CSHHC's wrongful termination and wrongful non-renewal, Plaintiff has suffered damages.

## COUNT THREE
### (Breach of the Implied Covenant of Good Faith and Fair Dealing)

58. Plaintiff repeats and realleges paragraphs 1 through 39 as if fully set forth herein.

59. In December 2017, CSHHC urged Plaintiff and her colleagues to execute a substitute contract that would run from January 1, 2018 through June 30, 2018, the end of the school year.

60. CSHHC represented that the purpose of the change would be to adjust the automatic renewal terms to run from July 1 to June 30 every year, in line with the school calendar. However, CSHHC's true purpose in proposing to make the change halfway through

9

the year, rather than at the end of the year, was to pay less to the employees for the sixth months from January to June 2018.

61. Under their existing contracts with CSHHC, Plaintiff and her colleagues were regularly paid 1/10th of their salaries during each month from September through June, and did not receive any payment in the months of July and August when the school and the SBHC were closed. Under the proposed substitute contracts, CSHHC would pay Plaintiff and her colleagues only 1/12th of their salaries per month from January through June 2018, which would amount to thousands of dollars less over the course of those six months.

62. Plaintiff orally notified her supervisor, Lucarelli, of this pay discrepancy, and also sent an email to CSHHC's Chief of Human Resources, Lobo, noting that the proposed interim contract would result in underpayment to the employees.

63. Plaintiff declined to sign the proposed substitute contract on this basis but indicated that she was willing to enter a new contract starting July 1, 2018 that would accomplish CSHHC's stated purpose of lining up the contracts with the school calendar.

64. In February 2018, Lobo stated that CSHHC planned to send Plaintiff a new contract for 2018-2019 for 35 hours per week at a certain annual salary; however, the new Contract that CSHHC handed to Plaintiff in June 2018 proposed to cut her hours and salary.

65. Lobo falsely represented that the reductions in hours and salary were per new requirements of the New Haven BOE.

66. After Plaintiff learned that the BOE had not imposed any such requirements, and notified Lucarelli (who notified Lobo and Brady), CSHHC wrongfully purported to terminate Plaintiff's contract on June 11, 2018 (effective June 20, 2018) based on a false allegation of

10

insubordination.  CSHHC failed to provide Plaintiff with the pre-termination notice and hearing to which she was entitled under the Contract.

67. On June 18, 2018, two days before the effective termination date, Lucarelli completed a performance evaluation affirming that Plaintiff's work during the 2017-2018 term had exceeded expectations.

68. Under the parties' Contract, CSHHC owed Plaintiff an implied duty of good faith and fair dealing.

69. CSHHC breached its duty of good faith and fair dealing by:

   a. attempting to trick Plaintiff into accepting less monthly compensation than she was owed under the Contract;

   b. attempting to reduce Plaintiff's hours and salary;

   c. falsely representing that the hours/salary reduction was mandated by the New Haven BOE;

   d. attempting to punish Plaintiff for doing her due diligence and discovering that the BOE had not imposed any such requirement;

   e. wrongfully terminating the Contract based on a false allegation; and

   f. failing to advise Plaintiff of, and failing to provide, the notice and hearing to which she was entitled prior to termination.

70. In so doing, CSHHC sought to deprive Plaintiff of her rights under the Contract.

71. As a result of CSHHC's breach of its duty of good faith and fair dealing, Plaintiff has suffered economic and noneconomic damages.

WHEREFORE, the Plaintiff claims:

A. Economic damages in the form of lost back pay, front pay, lost benefits, and other pecuniary losses, together with interest as permitted by law;

B. Liquidated damages pursuant to 29 U.S.C. §§ 626(b) and 216(b) (as to Count One only);

C. Other affirmative relief if necessary to eradicate the effect of Defendants' unlawful employment practices; and

D. Any other relief that the Court deems reasonable and just.

## **DEMAND FOR JURY TRIAL**

Plaintiff hereby demands a jury trial on all causes of action and claims with respect to which she has a right to jury trial.

        THE PLAINTIFF
        JANE RUBENSTEIN

By: */s/ Jeffrey P. Nichols*
    David A. Slossberg (ct13116)
    Jeffrey P. Nichols (ct29547)
    Hurwitz, Sagarin, Slossberg & Knuff, LLC
    147 North Broad Street
    Milford, CT  06460
    Telephone: (203) 877-8000
    Fax: (203) 878-9800
    DSlossberg@hssklaw.com
    JNichols@hssklaw.com

## CERTIFICATION

I hereby certify that, as required by General Statutes § 46a-103, a copy of the Complaint was sent to the Connecticut Commission on Human Rights and Opportunities by emailing a copy addressed to ROJ@ct.gov.

>                   */s/ Jeffrey P. Nichols*
>                   Jeffrey P. Nichols